**BARCELONA.COM, INC., Plaintiff,**

v.

**EXCELENTISIMO AYUNTAMIENTO DE BARCELONA, Defendant.**

No. 00–CV–1412.

United States District Court, E.D. Virginia, Alexandria Division.

Feb. 22, 2002.

Jordan Scot Weinstein, Oblon, Spivak, McClelland Maier & Neustadt PC, Arlington, VA, for Defendant.

## MEMORANDUM OPINION

HILTON, Chief Judge.

This matter came before the Court for trial without a jury on December 5, 2001. The Plaintiff in this case is a United States corporation, incorporated under the laws of Delaware. The Defendant is the City Council of Barcelona, Spain. Plaintiff is seeking a declaratory judgment asserting that its registration of the domain name barcelona.com is not unlawful. Defendant has filed a counterclaim under the Anticybersquatting Consumer Protection Act, 15 U.S.C. §§ 1114, 1116, 1117, 1125, 1129, asking that Network Solutions, Incorporated be ordered to transfer the domain name barcelona.com to the Council.

In February 1996, Joan Nogueras Cobo (hereinafter "Nogueras") registered the domain name barcelona.com in the name of his wife, Concepcio Riera Llena (hereinafter "Riera") with the domain name registrar, Network Solutions, Incorporated (hereinafter "NSI"). In February 1997, Nogueras launched the website barcelona.com. On this website, Nogueras provided information about the city of Barcelona, an email service, a chat room, advertising and links to other Internet services. In February 1999 Nogueras offered the Defendant a chance to negotiate for the domain name barcelona.com. October, 1999 Nogueras incorporated barcelona.com, Inc. under the laws of Delaware. In March and April 2000 Nogueras met twice with representatives of the Defendant. During the April meeting, Nogueras presented the Defendant's representative with a business plan concerning the potential value of barcelona.com. This business prospectus contained glaringly inflated figures and overstated the overall worth of the domain

Richard Allen Dezio, Alexandria, VA, for Plaintiff.

name and the corporation. The Defendant subsequently demanded the transfer of the domain name to the City Council. Following this demand, Riera transferred the domain name barcelona.com to Plaintiff corporation and changed the Spanish address in the domain name record to a United States address. Plaintiff corporation lists a mailing address in New York but does not rent, lease or own office space in New York, nor does it possess a New York telephone number. Plaintiff corporation has no employees, pays no salaries and owns no separate bank accounts. Nogueras and Riera are the sole shareholders of Plaintiff corporation.

NSI is a private company that, until 1999, was the exclusive registrar of the ".com", ".org" and ".net" domain names. At the time of Riera's registration of barcelona.com, NSI was the only registrar of the first level domain name ".com". To register a domain name with NSI requires the filing of an application, available on the Internet, with the registrar. The process by which these domain names are registered is almost completely automated. NSI's registration system does not check to see whether the domain name sought to be registered is subject to a trademark, nor does it check to see how similar the proposed domain name is to a previously registered domain name. Thus, disputes arise when a registered domain name contains a mark not owned by the registrant of the Internet address. Each registrant agrees to abide by the terms of NSI's registration policy. That policy requires all registrants to arbitrate any domain name disputes with the World Intellectual Property Organization (hereinafter "WIPO").

Due to the frequency of disputes and the international nature of the Internet, the United States government established the Internet Corporation for Assigned Names and Numbers (hereinafter "ICANN") in 1998 to address the problems created by domain name registrations.[1] ICANN, in turn, adopted the Uniform Dispute Resolution Policy (hereinafter "UDRP"), which now governs all those who register a .com domain name. In addition, ICANN appointed four entities to implement the policies under the UDRP. The major entity which arbitrates any disputes arising under the UDRP is WIPO. In order for a trademark owner to dispute the registration of a domain name, he must file a complaint with WIPO. Thereafter, a WIPO panelist or panel decides the case. There is no appeal available within the WIPO process, but the losing party may bring a declaratory judgment action in federal district court to establish that the domain name owner did not unlawfully register the name.

As a domain name registrant with NSI, Riera agreed to follow all of the terms of NSI's registration policy. A term of the NSI policy is that all registrants must arbitrate any domain name registration disputes with the WIPO panel. By agreeing to the terms of the policy, Riera agreed to have WIPO determine whether the domain name barcelona.com infringed upon any trademark.

In May 2000 the Defendant, after reviewing Plaintiff's website, sent a letter to Plaintiff contesting Plaintiff's use of the word "Barcelona" in the barcelona.com domain name. The Defendant subsequently filed a complaint with WIPO in May 2000, disputing Plaintiff's registration of the barcelona.com domain name. On August 4, 2000 a WIPO panelist ruled in favor of the Defendant and ordered the transfer of the domain name barcelona.com to the City Council of Barcelona. The WIPO panelist made the determination that the City Council of Barcelona owned a trademark

---

1. ICANN is a nonprofit corporation that manages the domain name system.

upon which the domain name barcelona.com infringed. On August 18, 2000, Plaintiff filed this action seeking a declaratory judgment that its registration of the barcelona.com domain name was not unlawful.

Title 15 subsection 1114(2)(D)(v) of the United States Code permits a domain name registrant to file a civil action for declaratory judgment in order to establish that the registration of the domain name is not unlawful. The UDRP allows a registrant ten days within which to file a declaratory judgment action in a state or federal court. During this ten day period, the decision of the WIPO panel will not take effect. If a registrant does proceed with a declaratory judgment action, the implementation of the WIPO decision is stayed pending a ruling by the state or federal court. If a court determines that the registrant's use of the domain name is not unlawful, it may grant injunctive relief to the registrant and permit the registrant to continue using the domain name, despite a WIPO panel's prior ruling to the contrary. In this case, the Plaintiff timely filed an action for declaratory judgment with this Court, seeking a determination that its use of the domain name barcelona.com was not unlawful.

■ The issue arises as to what effect this Court must give to the WIPO decision under these circumstances. In *Weber–Stephen Products Co. v. Armitage Hardware and Building Supply, Inc.*, 2000 WL 562470 at *2 (N.D.Ill. May 3, 2000), the court concluded that a federal district court "is not bound by the outcome of the ICANN administrative proceedings" but it declined "to determine the precise standard by which [to] review the panel's decision, and what degree of deference (if any) [to] give that decision." *Parisi v. Netlearning, Inc.*, 139 F.Supp.2d 745, 752 (E.D.Va.2001), supports the determination that a WIPO ruling is not binding on a District Court reviewing such a case. In addition, the WIPO Final Report recommends that

a party should be free to initiate litigation by filing a claim in a competent national court instead of initiating the administrative procedure, if this is the preferred course of action, and should be able to seek a de novo review of a dispute that has been the subject of the administrative procedure. WIPO Final Report, ¶ 150(iv).

Finally, Title 15 U.S.C. subsection 1114(2)(D)(v) contains no language which would dictate that a district court must give any deference to the arbiter's ruling. Considering the language of the statute, the panel ruling should be given no weight and this case must be decided based on the evidence presented before the Court.

■ The Court must consider whether either party in this case possesses a valid trademark for the name "Barcelona".[2] Neither the Plaintiff nor the Defendant in this case have a United States trademark for the name "Barcelona". Nor do Plaintiff or Defendant have a Spanish trademark for the name "Barcelona" alone. However, Defendant does possess multiple Spanish trademarks containing the term "Barcelona".[3] Under Spanish law, when

---

**2.** The addition of .com to the end of a name as part of a domain name does not affect the status of the mark, since .com is a generally available top level domain name. *See* G. Gervaise Davis III, esquire, *Internet Domain Names and Trademarks: History and Recent Developments in Domestic and International Disputes: Enabling Electronic Commerce on the Internet*, 670 PLI/Pat 551, *555 (November 2001) (noting that the ".com designation, no longer signifies anything but a user, and may be individuals or businesses.").

**3.** These trademarked names include "Excelentisimo Ayuntamiento de Barcelona" in addition to combinations of the name "Barcelona" with such descriptive words as "Teatre", "Canal" and "Television".

trademarks consisting of two or more words contain one word that stands out in a predominant manner, that dominant word must be given decisive relevance. Thus, under Spanish law, when considering a mark that contains two or more words, one must determine which word creates the most dominant impression in the mind of the consumer. Under the facts of this case, the term "Barcelona" has been included in many trademarks consisting of two or more words owned by the City Council of Barcelona. In most of these marks, the word "Barcelona" is clearly the dominant word which characterizes the mark.

▆▆▆ Spanish law further dictates that the first to properly register a trademark is the only legally authorized user of such a trademark. In addition, the law of Spain provides that names of Spanish communities, municipalities and provinces cannot be registered as trademarks without the authorization of the municipal authorities. The City of Barcelona is clearly a Spanish municipality and there is no dispute that Plaintiff did not obtain authorization from the City Council of Barcelona to register the name "Barcelona". The evidence is clear that the Defendant in this case owns a legally valid Spanish trademark for the dominant word "Barcelona". The Plaintiff has offered no evidence to the contrary.

▆▆▆ In determining whether to grant declaratory judgment for the Plaintiff, this Court must decide whether Plaintiff's use of the Barcelona trademark is "not unlawful". The Court first notes the confusing similarity between the barcelona.com domain name and the marks held by the Council. In addition, an Internet user would reasonably expect the services and information provided by the barcelona.com

website to be offered by the City of Barcelona, Spain. Both the City's official website and the Plaintiff's website provide tourist information and tourism-related services associated with the City of Barcelona. Thus, this Court finds that the WIPO decision was correct in its determination that barcelona.com, Inc. took "advantage of the normal confusion" of an Internet user by using the "Barcelona route" because an Internet user would "normally expect to reach some official body . . . for . . . the information." [4]

The Court further finds that the circumstances surrounding the incorporation of barcelona.com, Inc. and the actions taken by Nogueras in attempting to sell the domain name evidence a bad faith intent to profit from the registration of a domain name containing the Council's mark. The Plaintiff corporation was formed in October 1999, several months after Nogueras first offered the Defendant a chance to negotiate for the domain name barcelona.com. In April 2000, Nogueras presented the Defendant with a business plan detailing his proposed development of the barcelona.com website. This business plan contained a grossly exaggerated appraisal of the worth of barcelona.com. Only after the Defendant sent Nogueras a letter in May 2000 demanding the return of the barcelona.com domain name did Riera transfer the name to the Plaintiff corporation. The Plaintiff corporation has no employees, pays no salaries, has no separate bank accounts, has only Riera and Nogueras as shareholders and does not own, lease or rent any office space in the state of its mailing address. Immediately following the domain name transfer, the Plaintiff corporation changed its address in the domain name record from a Spanish location

---

**4.** *Excelentisimo Ayuntamiento de Barcelona v. Barcelona.com Inc.,* No. D2000–0505 (WIPO Aug. 4, 2000).

to one in the United States. These factors clearly demonstrate a bad faith intent on the part of the Plaintiff and its sole shareholders to improperly profit from their registration of the domain name barcelona.com. The Court, therefore, does not find that the Plaintiff's use of the Defendant's mark was "not unlawful".

 The Court must next consider Defendant's counterclaim for relief under the Anticybersquatting Consumer Protection Act (hereinafter "ACPA"). In deciding the ACPA claim, the Court must first determine whether the ACPA applies to violations of foreign marks, or whether its application is limited to violations of United States trademarks. Title 15 subsection 1125(d)(1)(A) of the United States Code provides that:

A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person

(i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

(ii) registers, traffics in, or uses a domain name that -

(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

(II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or

(III) is a trademark, word, or name protected by reason of section 706 or Title 18 or section 220506 of Title 36.

This statute was enacted to protect trademark owners from the attempts of domain name registrants to register names containing marks before the trademark owners could register the domain name themselves. The practice of preemptively registering a domain name that a registrant thought would later become valuable to a mark owner grew phenomenally with the growth and expansion of the Internet. Individuals would register a domain name and then either approach or wait to be approached by a mark owner willing to pay substantial sums to own the rights to their name on the Internet. Congress, aware of the problems that this phenomenon was creating, enacted the ACPA.

In the text of the statute Congress makes no distinction between United States or foreign marks, even though trademark law has historically been governed and regulated on a national level. However, this law was framed to govern the registration of domain names on the Internet, and the framers were perfectly aware of the international nature of the Internet when enacting the law. When an individual registers a domain name on the Internet, the initial act of registration may take place within the United States, but the effects of such a registration can be felt worldwide. An Internet site registered in the United States can be viewed by anyone with Internet access anywhere in the world. Further, while the registration may be in the United States, a party need not be in the United States to actually register a domain name. Registration itself occurs over the Internet, thereby permitting an individual to register a U.S. domain name from anywhere in the world. It is untenable to suppose that Congress, aware of the fact that the Internet is so international in nature, only intended for U.S. trademarks to be protected under the Anticybersquatting statute. Indeed, the federal government established ICANN, which, in turn, authorized the World Intellectual Property Organization to resolve Internet domain name disputes. This au-

thorization was granted, in part, precisely because of the international nature of these disputes. For these reasons, this Court is of the opinion that the Spanish trademark "Barcelona" is valid for purposes of the ACPA.

■ Next, the Court must address whether the Plaintiff had a bad faith intent to profit from the mark "Barcelona" through its registration of the domain name barcelona.com. *See* 15 U.S.C. § 1125(d)(1)(A)(i). The ACPA sets out nine factors that a court may use in considering whether a person possessed bad faith intent in registering a domain name. 15 U.S.C. § 1125(d)(1)(B). These factors are:

I. the trademark or other intellectual property rights of the person, if any, in the domain name;

II. the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

III. the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

IV. the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

V. the person's intent to divert customers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

VI. the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any

goods or services, or the person's prior conduct indicating a pattern of such conduct;

VII. the person's provision of material and misleading false contact information when applying for the registration of the domain name . . . .

VIII. the person's registration or acquisition of multiple domain names which the person knows or are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

IX. the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of this section.

15 U.S.C. § 1125(d)(1)(B)(i)

In order to properly evaluate the intent of the Plaintiff, the circumstances surrounding Plaintiff's registration and use of the domain name barcelona.com need to be reviewed. Nogueras registered the domain name barcelona.com in the name of his wife, Riera, in February 1996. He has registered nearly 60 web sites containing city names and has registered well over 100 names in total. In February 1997, Nogueras launched the website barcelona.com providing several services to Internet users including email services, hotel, hostel and car reservations, and airline ticket purchasing. However, most of these services are provided through third party affiliates of barcelona.com, and not barcelona.com, Inc., itself. Barcelona.com, Inc. has no employees, pays no salaries and has no separate bank accounts.

Nogueras sent an email to Defendant in February 1999 offering to negotiate for the domain name barcelona.com. In October

1999, Plaintiff corporation was incorporated in Delaware. Plaintiff corporation has no employees, pays no salaries to its officers and has no separate bank accounts. Plaintiff's only shareholders are Riera and Nogueras and all funds that Plaintiff receives are deposited in Riera's account. Plaintiff maintains a mailing address in New York but has no telephone listing there, nor does it own, lease or rent any office space in New York. Nogueras met with Defendant's agent in March and April 2000. During these meetings Nogueras discussed his proposed development of the barcelona.com web site. Nogueras presented a business plan at the April meeting in which he described the planned development of the barcelona.com web site. This business plan contained grossly exaggerated figures of the worth of barcelona.com and Nogueras' proposed developments. On May 2, 2000 Defendant sent a letter to Riera and Nogueras, demanding transfer of the barcelona.com domain name. On May 5, 2000, Riera instructed NSI to transfer the domain name barcelona.com from her name to the name of the Plaintiff corporation. On May 10, 2000 Plaintiff corporation changed its address from a Spanish location to an address in the United States in the domain name record. Defendant filed an administrative complaint against Plaintiff with WIPO on May 26, 2001.

In assessing whether the Plaintiff exhibited bad faith intent, the Court first notes that barcelona.com, Inc. does not possess any trademark or intellectual property rights in the name "Barcelona". First and foremost, the Plaintiff has not registered a trademark in any country for the name "Barcelona". Further, as discussed earlier in this Opinion, under Spanish trademark law, it would have been necessary for the Plaintiff to get Defendant's permission before even attempting to register the "Barcelona" trademark in Spain due to the fact that Barcelona is the name of a Spanish

city. Finally, as previously discussed, under Spanish trademark law, the first to register a complex mark with a dominant term is the exclusive possessor of rights to that mark. Here, the Defendant has clearly registered a complex mark with the dominant word "Barcelona", thus the Defendant is the exclusive owner of the mark.

Barcelona.com, Inc., while obviously the name of the Plaintiff corporation, was not created until three years after the domain name was registered. This incorporation did not occur until after Nogueras attempted to sell the barcelona.com site to the Defendant. Thus, while Plaintiff's name does consist of the "legal name...that is commonly used to identify that person", the legal name of the Plaintiff was not created until after the domain name was registered.

Further, while the Plaintiff does offer some services on its website, those services are generally provided through third party servers and are not maintained by the Plaintiff, itself. Plaintiff does not have any employees, nor does it have any assets other than its domain name. Plaintiff's only shareholders are Riera and Nogueras and Plaintiff pays no salaries to its officers. It is clear that barcelona.com offers minimal goods and services and generally serves as a mere conduit to other sites.

The Plaintiff attempted to sell the barcelona.com website to the Defendant in August 1999. Nogueras sent an email to the City Council of Barcelona in August 1999 notifying the City that he had owned the domain name barcelona.com for three years, and that the City should negotiate for use of the name. Nogueras went on to write that the domain name could end up in the hands of people who would use it wrongly. While Nogueras denies that this was an offer to sell the domain name to the Defendant, the Court finds that this was a thinly veiled attempt to demand money

from the City Council in return for the domain name containing their mark. Further, during an April meeting with a representative of the City Council, Nogueras presented a business plan which grossly exaggerated the value of the barcelona.com business prospects. This email and business plan exhibit a bad faith intent on the part of the Nogueras to profit off of the Defendant's mark.

Finally, this Court notes the actions of Nogueras and Riera in May 2000, after they received a letter from the Defendant demanding the transfer of the barcelona.com domain name. Within a week of this letter being sent, Nogueras and Riera transferred the domain name barcelona.com to Plaintiff corporation and changed the address of the corporation from Spain to the United States. The Court finds that these actions further reflect the bad faith intent of Nogueras and Riera in their registration of the barcelona.com domain name.

Finally, under the ACPA, the Court must determine whether Riera registered "a domain name that...is identical or confusingly similar" to the Defendant's mark. The Court first notes that the domain name barcelona.com is confusingly similar to the Defendant's trademarks as all contain the term "Barcelona" as the dominant element. Further, the Court reiterates its determination that the barcelona.com website offers services and information that an Internet browser would reasonably expect to be offered by the City of Barcelona, Spain. Indeed, the contents of the Council's own website are quite similar to that provided on the barcelona.com website. Both sites provide tourist information and services about the City of Barcelona, and Plaintiff's website even allows a user to view unauthorized information contained on the Council's website. Thus, this Court agrees with the WIPO panelist's determination that barcelona.com, Inc. took "advantage of the normal confusion" of an Internet user by using the "Barcelona route" because an Internet user would "normally expect to reach some official body ... for ... the information." [5] For these reasons, the Court finds ample evidence of a confusing similarity between the Plaintiff's domain name and the Defendant's mark.

Plaintiff in this action seeks a determination that its domain name, barcelona.com, does not violate any marks and that Riera's registration of the name was not unlawful. The Court cannot make such a determination. Riera consented in the registration agreement to have a WIPO panel determine any dispute arising from barcelona.com, Inc.'s registration of the domain name barcelona.com. This Court is of the opinion that the WIPO panel's decision was correct on the merits. Thus, the Court finds that the Plaintiff's request for a declaratory judgment ruling that the registration of the domain name barcelona.com was not unlawful should be denied. The Court finds that Defendant's counterclaim under the ACPA is well taken, and that the Defendant's lawful Spanish marks satisfy the requirements of the statute. In addition, Nogueras exhibited bad faith intent through his registration of multiple other potentially infringing domain names, his attempts to sell the domain name to the Defendant, his lack of trademark or intellectual property rights in the name "Barcelona", and his failure to provide more than minimal goods and services through the site. Finally, the Plaintiff's domain name is confusingly similar to the Defendant's mark. Thus, under the

---

**5.** *Excelentisimo Ayunatamiento de Barcelona v. Barcelona.com Inc.,* No. D2000–0505 (WIPO Aug. 4, 2000).

ACPA Plaintiff, through the actions of Nogueras, has exhibited a bad faith intent to profit from the use of the Defendant's mark.

An appropriate order shall issue.